EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Robert Ortiz Ortiz<br><br>Recurrido<br><br>v.<br><br>Medtronic Puerto Rico Operations, Co.<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 76<br><br>209 DPR \_\_\_\_ |

Número del Caso:  CC-2020-474


Fecha: 15 de junio de 2022


Tribunal de Apelaciones:

Panel IV


Abogados de la parte peticionaria:

 Lcdo. Gregory T. Usera
 Lcdo. Diego Agüeros Jiménez


Abogados de la parte recurrida:

Lcdo. Edgar Pérez Durán
Lcdo. Waddy J. Renta Acevedo


Materia: Derecho Laboral – Aplicación de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017, 29 LPRA sec. 121 *et seq.*


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Robert Ortiz Ortiz<br><br>Recurrido<br><br>v.<br><br>Medtronic Puerto Rico<br>Operations, Co.<br><br>Peticionaria | CC-2020-474 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 15 de junio de 2022.

En este caso, aclaramos si las enmiendas introducidas por la Ley Núm. 4-2017, conocida como *Ley de Transformación y Flexibilidad Laboral* (Reforma Laboral o Ley Núm. 4), 29 LPRA sec. 121 *et seq.*, respecto al esquema probatorio en las reclamaciones laborales instadas al amparo de la Ley Núm. 80 de 30 de mayo de 1976, conocida como *Ley de Indemnización por Despido sin Justa Causa* (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*,[1] aplican de forma retroactiva.

---

[1]    Destacamos que, al aludir en esta Opinión a la Ley Núm. 80 de 30 de mayo de 1976, conocida como *Ley de Indemnización por Despido sin Justa Causa* (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, nos referimos a las disposiciones de este estatuto previo a las enmiendas efectuadas por la Ley Núm. 4-2017, conocida como *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 185a *et seq.*, la cual está en vigor desde el 26 de enero de 2017.  De igual forma, adelantamos que los hechos que originaron el presente recurso ocurrieron con anterioridad a la fecha de efectividad de tales enmiendas.

A la luz del carácter sustantivo de la disposición estatutaria, la intención legislativa y el principio jurídico de la irretroactividad de las leyes, adelantamos que resolvemos que no. Por otro lado, nos corresponde determinar si erró el Tribunal de Apelaciones en su apreciación en cuanto a la suficiencia de la prueba al sustituir el criterio del Tribunal de Primera Instancia y concluir que el despido en cuestión fue arbitrario, caprichoso e injustificado. Por los fundamentos que discutimos a continuación, determinamos que sí.

## I

El 22 de febrero de 2017, a casi un mes de la entrada en vigor de la Reforma Laboral, el Sr. Robert Ortiz Ortiz (señor Ortiz Ortiz o recurrido) presentó una *Querella* en contra de Medtronic Puerto Rico Operations, Co. (Medtronic o peticionaria) al amparo de la Ley Núm. 80.[2] En esencia, alegó que fue contratado por Medtronic desde el 5 de agosto de 2002 y que llegó a ocupar el puesto de especialista en salud y seguridad *senior* (*Senior EHS Specialist*) hasta que fue despedido el 3 marzo de 2016 sin justificación alguna.[3] Asimismo, sostuvo que se desempeñó de manera sobresaliente

---

[2]   El Sr. Robert Ortiz Ortiz (señor Ortiz Ortiz o recurrido) se acogió al trámite dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3118 *et seq.*, para proseguir su reclamación.

[3]   Según se alegó en la *Querella*, "al momento de su despido el sueldo del [recurrido] era de $34.59 por hora, equivalentes a $1,383.60 semanales, equivalentes a $5,991.99 mensuales". *Querella*, Apéndice del *certiorari*, pág. 4.

y sin deficiencias mientras trabajó, por lo que solicitó el pago de una mesada por $53,949.57 y honorarios de abogado.

Por su parte, el 6 de marzo de 2017, Medtronic presentó una *Contestación a querella*. En contraste, arguyó que el despido del señor Ortiz Ortiz estuvo justificado debido a su historial reiterado de desempeño deficiente. Indicó que, tras varios señalamientos en evaluaciones previas y luego de incumplir con las responsabilidades de su puesto, el recurrido obtuvo una clasificación de "No Cumple" (*Not Meet*) en su evaluación de desempeño de 2015. En vista de ello, Medtronic implementó un plan de mejoramiento o *Performance Improvement Plan* (PIP, por sus siglas en inglés) para el recurrido por un periodo de noventa (90) días y le advirtió que podrían tomarse acciones disciplinarias en su contra -incluyendo la terminación del empleo- si su desempeño no mejoraba.

Según destacó Medtronic, mientras el plan de mejoramiento aún estaba en curso, la Junta de Calidad Ambiental (JCA) llevó a cabo una inspección sorpresa el 10 de diciembre de 2015 en cuanto a la disposición de desperdicios sólidos y desperdicios peligrosos en la fábrica. A raíz de esta intervención, surgieron ciertos hallazgos que motivaron que la inspectora de la JCA refiriera el asunto a la División Legal de esta agencia. Particularmente, los tres (3) hallazgos mayores relacionados con el manejo e identificación inapropiada de desperdicios peligrosos en el área de almacenamiento fueron los

siguientes: (1) falta de información en la etiqueta localizada en un contenedor de cincuenta y cinco (55) galones; (2) diecisiete (17) galones de material fluido (químicos) expirados sin que se les colocara la etiqueta de "Material Peligroso" (*Hazardous Waste*) ni se registrara la fecha en la que el material se movió del área, y (3) varios contenedores utilizados para drenar desperdicios sin que estuvieran completamente sellados cuando no estaban en uso o que se encontraban con la tapa suelta.[4]

Medtronic aseveró que, conforme a su investigación, el incumplimiento del recurrido con sus responsabilidades y las regulaciones aplicables originó los hallazgos en cuestión, lo que a su vez le ocasionó un impacto económico negativo a la compañía.[5]   Ante ese cuadro, Medtronic afirmó que el despido del señor Ortiz Ortiz no fue arbitrario ni caprichoso, sino que respondió a factores objetivos que procuraron la buena marcha y el normal funcionamiento de la empresa, así como la integridad de sus operaciones.

Luego de culminar el descubrimiento de prueba, Medtronic presentó una *Moción in limine sobre peso de prueba y orden de presentación*.   En específico, alegó que el peso de la prueba le correspondía al empleado, ya que la Ley Núm. 4

---

[4]   *Contestación a querella*, Apéndice del *certiorari*, págs. 9-10.

[5]   El 23 de septiembre de 2016, Medtronic Puerto Rico Operations, Co. acordó suscribir con la Junta de Calidad Ambiental (JCA) una orden por consentimiento, en virtud de la cual pagó $6,000 sin que ello se entendiera como una admisión de haber violado las leyes o los reglamentos de la JCA.

eliminó la disposición expresa de la Ley Núm. 80 que le imponía al patrono el deber de alegar los hechos que motivaron el despido y probar su justificación. De esta forma, adujo que la presunción de despido injustificado fue eliminada, indistintamente de la fecha de contratación o de despido del empleado, por lo que solicitó que se estableciera el peso de la prueba conforme a esta interpretación.[6]

Luego de evaluar el mencionado escrito y los argumentos de las partes en corte abierta, mediante una *Minuta-Resolución* notificada el 24 de enero de 2018, el tribunal de instancia examinó si la disposición en controversia era una de carácter sustantivo o procesal. Según razonó, se trataba de una disposición de carácter procesal, por lo que la enmienda introducida por la Ley Núm. 4 aplicaría retroactivamente a todos los casos pendientes o presentados en virtud de la Ley Núm. 80 ante los tribunales.[7] Así, concluyó que el presente caso "no gozar[ía] de la presunción de despido injustificado la parte querellante y, por lo tanto, el [peso de la prueba] recae[ría] sobre dicha

---

[6] *Moción in limine sobre peso de prueba y orden de presentación*, Apéndice del *certiorari*, págs. 333-336.

[7] En específico, el Tribunal de Primera Instancia expuso lo siguiente:

"Hay que tener claro que esto es una enmienda de carácter procesal y no sustantivo. No se debe confundir con el Artículo 1.2 de la Ley [Núm.] 4 de [la] Reforma Laboral, que dispone que los empleados contratados con anterioridad a la vigencia de [e]sta ley continuarán disfrutando de los mismos derechos y beneficios que tenían previamente según lo dispuesto expresamente en los artículos de ést[a]". *Minuta-Resolución* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 347.

parte".**8** Ante esto, el señor Ortiz Ortiz presentó una *Moción solicitando señalamiento de juicio*.**9**

Luego del juicio en su fondo y tras aquilatar la prueba documental y testifical, el tribunal de instancia emitió una *Sentencia* el 20 de diciembre de 2018, notificada el 28 de diciembre de 2018, en la cual expuso ciento ocho (108) determinaciones de hechos. En síntesis, concluyó que el recurrido incumplió con sus funciones en el manejo de desperdicios peligrosos, lo que constituye un asunto altamente regulado. Asimismo, determinó que no existía apoyo alguno en el expediente para concluir que se trataba de un despido por primera falta, ya que la prueba demostraba un patrón de desempeño deficiente por parte del señor Ortiz Ortiz durante los años 2013, 2014 y 2015, de modo que, durante la implementación del plan de mejoramiento, su incumplimiento acarreó ciertos señalamientos mayores por parte de la JCA y ello culminó en su despido.

Así las cosas, el foro de instancia expuso lo siguiente al desestimar la *Querella* del recurrido:

> La evidencia estableció que Ortiz tenía un historial de desempeño insatisfactorio y que Medtronic lo despidió por esa razón.
>
> . . . . . . . .
>
> Por ende, está claro que Ortiz se estaba desempeñando insatisfactoriamente hacía un

---

**8**  *Minuta-Resolución* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 350.

**9**  En lo pertinente a la controversia que nos ocupa, el recurrido expresó que "esta[ba] preparad[o] para seguir con el presente caso y presentar [su] prueba asumiendo el primer turno". *Moción solicitando señalamiento de juicio*, Apéndice del *certiorari*, pág. 352.

tiempo, al punto de que se le colocó en un plan de mejora de desempeño o PIP, y que Ortiz estaba avisado [de] que si no mejoraba y ejecutaba sus funciones sin errores se exponía a ser despedido.

. . . . . . . .

El caso de autos no involucra un caso de disciplina progresiva, sino un caso de un historial reiterado de desempeño deficiente.

. . . . . . . .

Ortiz no presentó evidencia alguna que pudiera llevar a este Tribunal a determinar que su despido fue injustificado. Tampoco presentó evidencia que [a] este Tribunal le mereciera credibilidad [o] que desacreditara los testimonios de los testigos de Medtronic ni la base de la Compañía para el despido. Los testimonios de la querellada en torno a las razones para el despido fueron totalmente consistentes. Incluso, las propias admisiones del querellante respecto a sus funciones y sus fallas de desempeño abonan a la conclusión de que su despido fue justificado y conforme a los parámetros de la ley.

En síntesis, la prueba desfilada en este caso nos lleva a concluir que Medtronic despidió a Ortiz existiendo justa causa para la terminación, de conformidad con las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. § 185(a) *et seq*. Por lo tanto, **este Tribunal decreta la desestimación con perjuicio de la reclamación de despido injustificado del Sr. Robert Ortiz Ortiz contra Medtronic.** (Negrillas en el original).[10]

En desacuerdo, el señor Ortiz Ortiz acudió ante el Tribunal de Apelaciones. En resumen, alegó que el Tribunal de Primera Instancia actuó con pasión, prejuicio o parcialidad en la apreciación de la prueba, la adjudicación de credibilidad y la determinación de hechos. Por otro lado, adujo que la transcripción de la prueba oral evidenció

---

[10] *Sentencia*, Apéndice del *certiorari*, págs. 377-378, 380.

que, contrario a lo resuelto por el tribunal de instancia, el despido se debió a un único evento sobre el cual el recurrido no tenía responsabilidad.

Así el trámite, el tribunal apelativo intermedio emitió una *Sentencia* el 11 de septiembre de 2020, notificada el 7 de octubre de 2020, mediante la cual revocó el dictamen del foro primario. Sostuvo que no halló indicios de pasión, prejuicio o parcialidad en el proceder del tribunal de instancia. Sin embargo, concluyó que el mencionado foro erró en la apreciación integral de la prueba al concluir que medió justa causa para el despido y desestimar la *Querella* instada por el señor Ortiz Ortiz.

El Tribunal de Apelaciones determinó que el peso de la prueba recaía en el patrono conforme a la Ley Núm. 80, antes de las enmiendas de la Ley Núm. 4, y expuso un resumen de los testimonios ofrecidos por los testigos en sala. Luego de un análisis de la prueba, indicó que no surgía evidencia en el expediente que permitiera establecer un historial de desempeño insatisfactorio por parte del recurrido. Esto se debió a que el plan de mejoramiento -al cual el señor Ortiz Ortiz fue sometido tras su evaluación de desempeño en 2015- fue aprobado satisfactoriamente luego de la inspección de la JCA y comenzada la investigación interna de Medtronic.

Según el tribunal apelativo intermedio, quedó demostrado que el recurrido nunca recibió una amonestación verbal o escrita ni una suspensión como establece el Manual del empleado. Asimismo, determinó que el despido ocurrió

solamente por los acontecimientos relativos a la inspección de la JCA. En consecuencia, el Tribunal de Apelaciones concluyó que el despido del señor Ortiz Ortiz fue arbitrario, caprichoso e injustificado debido a que nuestro ordenamiento jurídico no favorece el despido como sanción a la primera falta y los hallazgos de la JCA -por sí solos- no perjudicaron el buen y normal funcionamiento de la empresa.[11]

Inconforme con el dictamen, Medtronic acudió ante este Foro mediante una *Petición de certiorari* y señaló los errores siguientes:

> Erró el [Tribunal de Apelaciones] como cuestión de derecho al sustituir el criterio del [Tribunal de Primera Instancia] con el suyo cuando el propio [Tribunal de Apelaciones] determinó que el [Tribunal de Primera Instancia] no incurrió en pasión, prejuicio ni [p]arcialidad y cuando claramente no existió error manifiesto en la Sentencia del [Tribunal de Primera Instancia].

> Erró el [Tribunal de Apelaciones] como cuestión de derecho al aplicar el estándar de

---

[11] El Juez Flores García emitió unas expresiones particulares en la *Sentencia* del Tribunal de Apelaciones. Específicamente, manifestó que Medtronic no logró precisar qué acciones del recurrido justificaban el despido como primera sanción ni su responsabilidad directa con los señalamientos de la JCA. Asimismo, expresó que le hubiese impuesto una sanción económica al representante legal del recurrido por imputaciones infundadas en contra de la Jueza del Tribunal de Primera Instancia. *Sentencia del Tribunal de Apelaciones* (Expresiones particulares del Juez Flores García), Apéndice del *certiorari*, págs. 1764-1765. Por su parte, la Jueza Méndez Miró emitió un Voto disidente mediante el cual expuso que no halló error manifiesto en la apreciación de la prueba y que la decisión de revocar el dictamen del foro primario reflejaba una mera diferencia de criterio. *Sentencia del Tribunal de Apelaciones* (Voto disidente de la Jueza Méndez Miró), Apéndice del *certiorari*, págs. 1766-1767.

prueba erróneo en el presente caso y darle la
espalda a la "Ley del caso"[.][12]

Así las cosas, expedimos el auto de *certiorari*
solicitado. Con el beneficio de la comparecencia de ambas
partes, procedemos a resolver las controversias planteadas
conforme al derecho aplicable.

**II**

**A. La Ley de Indemnización por Despido sin Justa Causa**

**1. Introducción**

La Ley Núm. 80 cumple el fin de proteger a los empleados
de actuaciones arbitrarias del patrono al disponer de
remedios económicos que desalienten los despidos
injustificados. SLG Torres-Matundan v. Centro Patología,
193 DPR 920, 929 (2015); Romero *et als.* v. Cabrer Roig *et
als.*, 191 DPR 643, 649-650 (2014); Feliciano Martes v.
Sheraton, 182 DPR 368, 379 (2011). En ese sentido, el
Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185a, dispone que
todo empleado de comercio, industria o cualquier otro
negocio o sitio de empleo, que sea contratado sin tiempo
determinado y trabaje mediante remuneración de alguna clase,
tendrá derecho a recibir de su patrono una indemnización
cuando sea despedido de su empleo sin que haya mediado justa
causa. Romero *et als.* v. Cabrer Roig *et als.*, *supra*,
pág. 650; Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR
937, 949-950 (2011).

---

[12] *Petición de certiorari*, págs. 3-4.

Este resarcimiento se conoce comúnmente como "la mesada" y constituye un remedio exclusivo disponible para los empleados despedidos injustificadamente, en tanto no existan otras causas de acción independientes al despido. León Torres v. Rivera Lebrón, 204 DPR 20, 36-37 (2020); Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 231 (2015); Romero et als. v. Cabrer Roig et als., supra, págs. 650-651. Cabe señalar que no existe una prohibición absoluta en contra del despido de un empleado, ya que éste puede ser despedido si existe justa causa, pero si no la hay entonces se configura la repercusión de que el patrono deberá asumir el pago de la mesada a favor del empleado. Véanse: Lugo Montalvo v. Sol Meliá Vacation, supra, págs. 230-231; Romero et als. v. Cabrer Roig et als., supra, pág. 651; Feliciano Martes v. Sheraton, supra, pág. 380. A la luz de lo anterior, hemos reiterado que la Ley Núm. 80 cumple dos propósitos primordiales, a saber: (1) desalentar la práctica de despedir a empleados sin que medie justa causa, y (2) proveerle a los empleados remedios consustanciales a los daños causados por los despidos injustificados. (Citas omitidas). González Méndez v. Acción Social et al., 196 DPR 213, 229-230 (2016).

A pesar de que la Ley Núm. 80 no define concretamente lo que constituye un despido injustificado, el estatuto expone de forma ilustrativa ciertas instancias en las que se justifica el despido de un empleado por parte del patrono. León Torres v. Rivera Lebrón, supra, pág. 37; González

Méndez v. Acción Social *et al.*, *supra*, págs. 230-231. Estos supuestos se fundamentan tanto en la conducta del empleado como en razones de índole empresarial. En lo pertinente al comportamiento del empleado, hemos interpretado que, según el Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, se considera como justa causa para el despido cuando el trabajador:

> (1) ha exhibido un patrón de conducta impropia o desordenada; **(2) no ha cumplido con sus labores de manera eficiente, ha realizado tarde o negligentemente su trabajo, o en violación a las normas aplicables**, o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento, los cuales le han sido suministrados oportunamente. (Negrillas suplidas). León Torres v. Rivera Lebrón, *supra*, pág. 37 (haciendo referencia a González Méndez v. Acción Social *et al.*, *supra*, pág. 231). Véase, además, 29 LPRA sec. 185b(a), (b) y (c).

De igual forma, el precitado artículo dispone que **no se entenderá por justa causa aquel despido que se haga por capricho del patrono o sin razón vinculada con el buen y normal funcionamiento del establecimiento**. Art. 2 de la Ley Núm. 80, *supra*. Véanse, además: León Torres v. Rivera Lebrón, *supra*, pág. 38; González Méndez v. Acción Social *et al.*, *supra*, pág. 231 esc. 12. De esa manera "[l]a ausencia de razonabilidad en las exigencias de conducta de los empleados puede convertir el despido[,] por no cumplir con esas exigencias, en uno caprichoso o arbitrario". R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, [sin Ed.], rev. 2005, pág. 120.

Por su parte, el profesor Alberto Acevedo Colom menciona que:

> **[e]l patrono tiene derecho a fijar los requisitos que debe cumplir una persona para poder ocupar un empleo. De igual forma[,] tiene derecho a fijar unos niveles mínimos de desempeño y/o producción[,] los cuales el empleado debe alcanzar para llegar a un nivel de competencia. No obstante, los requisitos fijados por el patrono deben guardar una relación directa con las funciones del empleo y los niveles de desempeño y/o producción deben ser razonables.** Los mismos deberán aplicarse de manera uniforme a todos los empleados y solicitantes de empleo. (Negrillas suplidas). A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed., San Juan, Ed. Ramallo Printing Bros., 2005, pág. 145.

Como sabemos, "[l]a ley no dispone un mínimo de amonestaciones antes de que el patrono pueda despedir al empleado justificadamente, ni tampoco que la amonestación debe hacerse en determinada forma". Acevedo Colom, *op. cit.*, págs. 137-138. Cónsono con lo expuesto, reafirmamos que "[l]a Ley Núm. 80 'no pretende, ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia'". SLG Torres-Matundan v. Centro Patología, *supra*, pág. 930 (citando a Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001)). Así, "la enumeración de escenarios que se consideran justa causa contenida en la Ley Núm. 80 no es taxativa". SLG Torres-Matundan v. Centro Patología, *supra*, pág. 930.

Es norma conocida que "[e]n todo contrato de empleo existe, expresa o implícita, la condición de que el empleado habrá de cumplir con los deberes de su empleo en forma competente […]". Blanes v. Tribunal de Distrito, 69 DPR 113, 120 (1948). Por otro lado, "los patronos pueden aprobar reglamentos internos y establecer las normas de conducta en el lugar de trabajo que estimen necesarias, y los empleados estarán sujetos a ellos, siempre y cuando éstos cumplan con el criterio de razonabilidad". Jusino et als. v. Walgreens, 155 DPR 560, 573 (2001). Por consiguiente, "las violaciones de las normas del empleo constituirán 'justa causa' para el despido cuando el patrono logre demostrar: (1) que las reglas establecidas para el funcionamiento del establecimiento son razonables[;] (2) que le suministró una copia escrita de dichas normas al empleado, y (3) que el empleado las violó en reiteradas ocasiones". Íd.

**2. El peso de la prueba en las reclamaciones por despido injustificado**

El esquema estatutario de la Ley Núm. 80 establece una presunción de que todo despido es injustificado y le impone al patrono el deber de demostrar, mediante preponderancia de la prueba, que hubo justa causa para el mismo. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 906-907 (2011). Así, el Art. 11 de la Ley Núm. 80, 29 LPRA sec. 185k(a), dispone que:

> **[e]n toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, el patrono vendrá obligado a alegar, en su contestación a**

> **la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título.** Igualmente, en toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, cuando se trate de que el empleado fue contratado por un término cierto o para un proyecto o una obra cierta, el patrono vendrá obligado a alegar en su contestación a la demanda estos hechos y a probar la existencia de un contrato *bona fide* para entonces quedar eximido de cumplir con el remedio que disponen las secs. 185a a 185m de este título, salvo que el patrono pruebe que el despido fue justificado. (Negrillas suplidas).

En función de lo expuesto, hemos señalado que la Ley Núm. 80 **"invierte el orden de la prueba en casos civiles y le impone al patrono el deber de probar *in limine* que el despedido fue justificado"**. (Negrillas suplidas). <u>Romero et als</u>. v. Cabrer Roig *et als.*, *supra*, pág. 652. Es decir, mediante el texto de la ley, "**[se] establece una excepción a la norma general de derecho que dispone que en toda reclamación judicial instada por una parte contra un demandado, sea el reclamante quien tiene la obligación de probar sus alegaciones para prevalecer en un pleito"**. (Negrillas suplidas). <u>Íd.</u>

Ahora bien, "**para disfrutar de la presunción generada por la Ley [Núm.] 80 hace falta, como elemento de umbral, que haya habido un despido"**. (Negrillas suplidas). <u>Rivera Figueroa v. The Fuller Brush Co.</u>, *supra*, pág. 907. Por tal razón, "[el] demandante tiene la obligación de aportar prueba que establezca los hechos básicos que den lugar a la presunción". (Cita omitida). <u>Íd.</u>, pág. 911. De

esta forma, le corresponde al empleado demostrar "que fue empleado de un comercio, industria u otro negocio; que su contrato era por tiempo indeterminado; que recibía remuneración por su trabajo, y *que fue despedido de su puesto*". (Énfasis en el original). Íd., pág. 907.

Una vez activada la presunción estatutaria a favor del empleado, el patrono tiene el deber de presentar prueba para rebatir la presunción y, además, persuadir al juzgador mediante preponderancia de la evidencia. Íd., pág. 911. En tal sentido, "los temas de *carga de prueba* y *presunciones* son inseparables". (Énfasis en el original). Íd., pág. 913; E.L. Chiesa Aponte, *Tratado de derecho probatorio: Reglas de evidencia de Puerto Rico y federales*, República Dominicana, Ed. Corripio, 1998, T. II, pág. 1088.

### 3. La Ley de Transformación y Flexibilidad Laboral

Debemos realizar un breve análisis de la Ley Núm. 4, conocida como *Ley de Transformación y Flexibilidad Laboral*, para contextualizar la controversia sobre el carácter retroactivo de la enmienda pertinente a la Ley Núm. 80. El 9 de enero de 2017, se presentó el P. de la C. Núm. 453, cuyo trámite legislativo culminó eventualmente con la aprobación de la Ley Núm. 4. Esta ley entró en vigor el 26 de enero de 2017 y tuvo el efecto de enmendar varias leyes laborales, entre las que se encuentra la Ley Núm. 80.

Según destaca la profesora Emmalind García García, "[u]no de los aspectos más discutidos de las enmiendas que la [Reforma Laboral] introdujo a la [Ley Núm. 80], que

incluso provocó una opinión de la Secretaria de Justicia [en ese entonces], fue lo relacionado con el orden de prueba que aparecía en [é]sta". (Escolio omitido). E. García García, *El legado e implicaciones de la reforma laboral de 2017*, 86 Rev. Jur. UPR 1087, 1156 (2017). Esto es así, particularmente, debido a que "se eliminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]. Íd., pág. 1157.

De esta forma, el Art. 4.12 de la Ley Núm. 4 enmendó el Art. 11 de la Ley Núm. 80 para que dispusiera lo siguiente:

> [e]n todo pleito fundado exclusivamente en las secs. 185a a 185n de este título, el tribunal celebrará una conferencia no más tarde de sesenta (60) días después de presentarse la contestación a la demanda o querella, a la cual las partes vendrán obligadas a comparecer o ser representados por una persona autorizada a tomar decisiones, incluyendo la transacción de la reclamación. Durante dicha vista se examinarán las alegaciones de las partes, se identificarán las controversias esenciales y se discutirán las posibilidades de una transacción inmediata de la reclamación. De no transigirse la reclamación, el tribunal ordenará el descubrimiento que quede pendiente y expedirá el señalamiento de fecha para celebrar la conferencia con antelación al juicio. 29 LPRA sec. 185k (Supl. 2021).

Por otra parte, sobre la aplicación prospectiva de la Ley Núm. 4, el Art. 1.2 establece que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de ésta". 29 LPRA sec. 121a (Supl. 2021). Finalmente, en cuanto a su vigencia, el Art. 7.3 de la Ley

Núm. 4 dispone que "[e]sta Ley empezará a regir inmediatamente después de su aprobación".

**B. La irretroactividad de las leyes**

La norma general de que las leyes no tendrán efecto retroactivo, excepto cuando se disponga expresamente lo contrario, ha sido consignada tanto en el Art. 3 del Código Civil de 1930, 31 LPRA sec. 3, como en el Art. 9 del Código Civil de 2020, 31 LPRA sec. 5323. Asimismo, ambos cuerpos normativos reconocen que el efecto retroactivo de una ley no podrá perjudicar los derechos adquiridos al amparo de una ley anterior. Íd.

Así pues, el principio de la irretroactividad de las leyes es un postulado jurídico fundamental de interpretación estatutaria que sólo cede ante determinadas y supremas circunstancias que hayan sido establecidas de manera concreta por el legislador. Nieves Cruz v. U.P.R., 151 DPR 150, 158 (2000). Por ende, los casos en los que nos hemos alejado de la norma general de irretroactividad son pocos, "ya que la absoluta retroactividad de las leyes conlleva la muerte de la seguridad y de la confianza jurídica". Asoc. Maestros v. Depto. Educación, 171 DPR 640, 648 (2007).

Sin embargo, "hemos reconocido que una ley podrá tener efectos retroactivos cuando surja de la intención legislativa, ya sea de forma expresa o tácita, el deseo del legislador de brindarle tal efecto". Rivera Padilla *et al.* v. OAT, 189 DPR 315, 340 (2013). Véanse, además: Clases A, B y C v. PRTC, 183 DPR 666, 679 (2011); Asoc. Maestros v.

Depto. Educación, *supra*, págs. 648-649. En ausencia de dicha intención, "entonces la ley aplicable al asunto es ***la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción***". (Énfasis en el original y negrillas suplidas). Nieves Cruz v. U.P.R., *supra*, pág. 159. Por consiguiente, "**[l]a intención de la Asamblea Legislativa dándole efecto retroactivo a una ley debe aparecer claramente, pues es por excepción que un estatuto se aplica retroactivamente**". (Negrillas suplidas). R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. JTS, 1987, pág. 391.

Ahora bien, cabe señalar que la regla de hermenéutica que desfavorece la retroactividad de las leyes no es absoluta.[13] Particularmente, este principio general "aplica solamente a disposiciones estatutarias de carácter sustantivo y no a aquellas de carácter procesal". Clases A, B y C v. PRTC, *supra*, pág. 680. Véanse, además: Cortés Córdova v. Cortés Rosario, 86 DPR 117, 123 (1962);

---

[13] Desde luego, "[h]ay leyes que pueden tener efecto retroactivo, aunque no lo dispongan expresamente. [É]stas son: (1) leyes de carácter u orden público; (2) leyes procesales que pueden aplicarse a procesos ya iniciados, si no dispusieren lo contrario; generalmente en el campo penal, si favorecen al acusado; (3) leyes jurisdiccionales, tanto sobre los sujetos, como sobre los organismos que ejercerán la jurisdicción; (4) leyes para hacer frente a emergencias nacionales, económicas o de seguridad doméstica, y (5) leyes que se aprueban para resolver males sociales o que revisten un gran interés público". (Escolio omitido). L. Muñiz Arguelles y otros, *La investigación jurídica: fuentes puertorriqueñas, norteamericanas y españolas*, 6ta ed., Bogotá, Ed. Temis, 2020, pág. 339.

Bernier y Cuevas Segarra, *op. cit.*, pág. 400. De ahí que "[l]a regla es a la inversa en las leyes procesales, que tienen efecto retroactivo y se aplican a los casos pendientes, a menos que la Asamblea Legislativa disponga lo contrario". Bernier y Cuevas Segarra, *op. cit.*

**C. La apreciación de la prueba**

Es norma conocida en nuestro ordenamiento jurídico que, "ante la ausencia de **error manifiesto**, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". (Negrillas suplidas). Santiago Ortiz v. Real Legacy *et al.*, 206 DPR 194, 219 (2021). Hemos expresado que "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). De esta manera, "la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". Santiago Ortiz v. Real Legacy *et al.*, *supra*, pág. 219; Meléndez Vega v. El Vocero de PR, 189 DPR 123, 142 (2013).

Ahora bien, incurre en pasión, prejuicio o parcialidad "aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". Dávila Nieves v. Meléndez Marín, *supra*, pág. 782. Por su parte, el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Íd., pág. 772. Véase, además, Méndez v. Morales, 142 DPR 26, 36 (1996).

En cuanto al concepto que nos atañe, hemos expresado que "se incurre en un error manifiesto cuando 'la apreciación de esa prueba ***se distancia de la realidad fáctica o es inherentemente imposible o increíble***'". (Énfasis en el original y negrillas suplidas). Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018) (citando a Pueblo v. Irizarry, 156 DPR 780, 816 (2002)). Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, **"no exista base suficiente que apoye su determinación"**. (Negrillas suplidas). Gómez Márquez *et al*. v. El Oriental, 203 DPR

783, 794 (2020); <u>Pueblo v. Toro Martínez</u>, *supra*, pág. 859. **Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión**. <u>Gómez Márquez *et al*</u>. v. El Oriental, *supra*.

### III

En primer lugar, analizaremos el segundo señalamiento de error por éste incidir en la revisión de la evaluación de la prueba efectuada por el Tribunal de Apelaciones. De esta forma, nos corresponde examinar quién tenía el peso de la prueba a la luz de los hechos particulares del presente caso y el marco jurídico esbozado. Para ello, consideraremos si las enmiendas de 2017 a la sección pertinente son de aplicación retroactiva. Por último, atenderemos el primer señalamiento de error sobre la suficiencia de la prueba para determinar si se extralimitó el tribunal apelativo intermedio al sustituir el criterio del foro de instancia. Veamos.

### A

Mediante su segundo señalamiento de error, Medtronic plantea que el foro apelativo intermedio aplicó un estándar de prueba erróneo y le dio la espalda a la ley del caso. En síntesis, la peticionaria sostiene que el señor Ortiz Ortiz presentó su *Querella* el 22 de febrero de 2017, entiéndase, un mes después del comienzo de la vigencia de la Reforma Laboral que, según afirma Medtronic, introdujo una enmienda de carácter procesal respecto al esquema probatorio de la Ley Núm. 80. También señala que, aun si el presente caso

se hubiese presentado antes del 26 de enero de 2017, el peso de la prueba recaería sobre el empleado puesto que se trata de una norma procesal que le aplicaría a todos los casos pendientes. No le asiste la razón a la peticionaria.

En el caso que nos ocupa, el tribunal de instancia sostuvo que la supresión del texto de la Ley Núm. 80 -que establecía la presunción de despido injustificado y la imposición del peso de la prueba sobre el patrono- constituía una enmienda de carácter procesal. En consecuencia, concluyó que, por tratarse de una disposición estatutaria de carácter procesal, y no de carácter sustantivo, el peso de la prueba recaía sobre el empleado, indistintamente de la fecha de su contratación o de su despido.

Por el contrario, el Tribunal de Apelaciones aplicó la disposición estatutaria de la Ley Núm. 80, antes de las enmiendas introducidas por el Art. 4.12 de la Ley Núm. 4. Por consiguiente, resolvió que el peso de la prueba recaía en el patrono. Aclaramos que la determinación del tribunal de instancia no alcanzó el grado de un dictamen final y firme para fines de la doctrina de la "ley del caso", por lo que se encontraba sujeta a revisión ante la adjudicación final del pleito. Luego de analizar minuciosamente las disposiciones estatutarias pertinentes, la intención legislativa y el principio jurídico de la irretroactividad de las leyes, coincidimos en este asunto con la aplicación

efectuada por el tribunal apelativo intermedio, pues la disposición enmendada no es de aplicación retroactiva.

En vista del marco de derecho antes reseñado, la disposición aplicable es la que se encontraba vigente al momento de los hechos que dieron lugar a la causa de acción por despido injustificado. En particular, el recurrido fue contratado el 5 de agosto de 2002 y despedido el 3 marzo de 2016, es decir, su causa de acción surgió antes de las enmiendas introducidas por la Reforma Laboral (la cual entró en vigor el 26 de enero de 2017). Por lo tanto, concluimos que el tribunal apelativo intermedio no erró en su análisis al resolver que el peso de la prueba recaía sobre el patrono según el esquema estatutario vigente al momento de su despido. El hecho de que la *Querella* del señor Ortiz Ortiz se presentara en el tribunal de instancia luego de la vigencia de la Ley Núm. 4 en nada altera este resultado. Véase <u>Arce Oliveras v. E.L.A.</u>, 122 DPR 877, 879 (1988).

**B**

Una vez atendido el asunto anterior, pasamos a resolver la controversia restante. Mediante su primer señalamiento de error, Medtronic alega que el Tribunal de Apelaciones estaba impedido de intervenir con las determinaciones del foro primario. En esencia, sostiene que el despido del recurrido se debió a su historial de desempeño deficiente, y no a un único evento. Por consiguiente, la peticionaria argumenta que el tribunal apelativo intermedio se extralimitó en su revisión de la evaluación de la prueba.

Luego de un análisis riguroso de la transcripción estipulada de la prueba oral y la evidencia documental, coincidimos con el razonamiento expuesto por la peticionaria en este asunto.

A través de sus ciento ocho (108) determinaciones de hechos, quedó demostrado -a satisfacción del tribunal de instancia- que el señor Ortiz Ortiz tenía un historial de desempeño deficiente y que Medtronic lo despidió por esa razón. En particular, surge de las evaluaciones de desempeño de 2013 y 2014 que el recurrido tuvo deficiencias en las áreas de *External Focus*, *Executes* y *Time Management*. Las últimas dos (2) deficiencias fueron reconocidas por el recurrido, tanto en la evaluación de desempeño de 2013,[14] como en la evaluación de desempeño de 2014.[15]

La situación se agudizó en el 2015 cuando el señor Ortiz Ortiz obtuvo una clasificación de "No Cumple" en su

---

[14]  El señor Ortiz Ortiz sostuvo lo siguiente:

"*I take accountability for the tasks assigned to me and deliver[ing] the expected results.  I need to work in my capacity to align th[e] team.  At this moment the EHS Department is not completely aligned. This is affecting the performance of the department.*

. . . . . . . .

*Time Management: I w[ould] like to take some training in this are[a] in order to [do] effectively all the tasks related to my job*". *Evaluación de desempeño de 2013*, Apéndice del *certiorari*, págs. 109-110.

[15]  El recurrido expresó lo siguiente:

"*I need to focus in comply[ing] with target days.  Sometimes I engaged in others activities that are required but distracted my focus on target days.*

. . . . . . .

*I w[ould] like to get training in time management in order to be more effective in focus[ing] my long term projects and comply[ing] with target days […]*". *Evaluación de desempeño de 2014*, Apéndice del *certiorari*, págs. 115-116.

evaluación de desempeño.[16]    En esa ocasión, presentó deficiencias en las áreas de *External Focus*, *Driven to Win*, *Executes*, *Boundaryless*, *Global* y -según surge de la propia autoevaluación del recurrido- *Time Management*.  Nuevamente, éste admitió deficiencias en cuanto a sus ejecutorias y el manejo del tiempo.  En específico, el recurrido falló en completar una certificación titulada *Green Belt*, que constituía una meta atrasada desde evaluaciones previas y un objetivo crítico para la fábrica, e incumplió con las tareas del programa titulado *Corrective Action Preventive Action*.  Además, el Sr. Frankie Iglesias Ramos, supervisor directo del señor Ortiz Ortiz, señaló que el recurrido no cumplía oportunamente con sus deberes, respondía de manera tardía las solicitudes del etiquetado necesario y no asumía liderazgo en situaciones que se encontraban dentro de sus responsabilidades.

Según el Manual del empleado, en los casos en los que el desempeño de forma consistente reflejara un perfil menor de lo esperado, Medtronic tendría la facultad de desarrollar un plan de mejoramiento que sería revisado de acuerdo a lo establecido en el mismo.[17]    El señor Ortiz Ortiz tenía conocimiento de lo anterior, pues recibió copia escrita del Manual, así como de las políticas razonables y las normas

---

[16] *Evaluación de desempeño de 2015*, Apéndice del *certiorari*, pág. 118.

[17] Véanse: *Manual del empleado de 2006*, Apéndice del *certiorari*, pág. 64; *Manual del empleado de 2014*, Apéndice del *certiorari*, pág. 89.

de la compañía.**18**    Ante esto, Medtronic le dio una oportunidad al recurrido para demostrar su capacidad y competencia a través de un plan de mejoramiento por un periodo de noventa (90) días.  Entre otras cosas, el plan de mejoramiento disponía lo siguiente:

> Again, the purpose of this PIP is to provide you with an outline on how to improve your performance to an expected and acceptable level. It is dependent upon you to embrace the issues and objectives identified above and utilize the resources that have been provided to you in order to improve your performance and meet your objectives.  I expect that you f[u]ll[y] focus on improving your performance and my intent is that you will turn your performance around to an acceptable level.
>
> **Please understand that this PIP is not a contract of continued employment. If improvement is not seen during the PIP period or improvement is not sustained during your tenure at Medtronic then further disciplinary action will be taken, up to and including termination of employment.** (Negrillas suplidas).**19**

Según señaláramos, es norma conocida que los empleados deben cumplir con los deberes de su empleo de forma competente.    Con esto en mente, razonamos que el incumplimiento posterior del recurrido en cuanto a la adecuada disposición de desperdicios sólidos y desperdicios peligrosos en la fábrica fue el detonante de una serie de deficiencias que el señor Ortiz Ortiz acarreaba en su desempeño.    El hecho de que el plan de mejoramiento

---

**18**  Este asunto fue estipulado por las partes.  Véase *Informe de conferencia con antelación al juicio*, Apéndice del *certiorari*, pág. 22.

**19**  *Performance Improvement Plan* de 29 de septiembre de 2015, Apéndice del *certiorari*, pág. 130.

finalizara el 18 de diciembre de 2015 no impedía que Medtronic continuara su investigación sobre la inspección realizada por la JCA el 10 de diciembre de 2015.[20] Tampoco imposibilitaba que Medtronic disciplinara al recurrido posteriormente, pues ya se le había advertido a este último sobre su incumplimiento con el desempeño esperado y las consecuencias de no demostrar una mejoría en su ejecutoria durante el periodo del plan de mejoramiento o su continuación en el empleo.

Ambas partes tuvieron amplia oportunidad de aportar prueba y confrontar la misma. De hecho, varios de los testimonios ofrecidos, incluyendo el del señor Ortiz Ortiz, fueron decisivos para detallar la relación directa entre los hallazgos señalados por la JCA y las tareas del recurrido respecto a la disposición y el recogido de desperdicios peligrosos en la fábrica. A manera de ejemplo, en cuanto al argumento esbozado por el recurrido sobre su falta de responsabilidad directa en cuanto a los señalamientos de la JCA, el foro de instancia determinó que "[su] testimonio no [le] mereció credibilidad, en tanto y en cuanto el propio querellante admitió en varias ocasiones que las funciones en

---

[20]    Cabe destacar que desde el **29 de septiembre de 2015** se dispuso que el *Performance Improvement Plan* concluiría el **18 de diciembre de 2015**. *Performance Improvement Plan* de 29 de septiembre de 2015, Apéndice del *certiorari*, pág. 130.

cuestión eran suyas y no hubo prueba alguna que demostrara que fueran compartidas".[21]

A pesar de lo anterior, el foro apelativo intermedio le negó deferencia al tribunal de instancia en cuanto a la adjudicación de credibilidad, esto sin especificar con claridad si se basó en la existencia de error manifiesto, pasión, prejuicio o parcialidad. Dentro de este contexto, determinamos que el foro apelativo intermedio se fundamentó en el concepto de error manifiesto.

Sin embargo, como se puede ver, la apreciación del foro de instancia no se distanció de la realidad fáctica ni tampoco era inherentemente imposible o increíble. Las determinaciones del tribunal de instancia encuentran apoyo en la prueba testimonial y documental desfilada, y de ninguna manera confligen con el balance más racional, justiciero y jurídico de la totalidad de la evidencia. En ese sentido, **no** encontramos que en este caso haya mediado error manifiesto, pasión, prejuicio o parcialidad. Debemos recordar que la mera diferencia de criterio jurídico **no** es suficiente para que se configure un error manifiesto que requiera la intervención del foro apelativo en las determinaciones de hechos.

En conclusión, Medtronic logró persuadir al foro de instancia, mediante preponderancia de la prueba, de que hubo

---

[21] *Sentencia del Tribunal de Primera Instancia*, Apéndice del *certiorari*, pág. 362.

justa causa para el despido por la incompetencia reiterada del recurrido en el contexto de una operación crítica, regulada y de alto riesgo como lo es el área ambiental. Contrario a lo argumentado por el recurrido, no estamos ante un caso de un despido por un único evento, sino por ineficiencia reiterada en el desempeño de los deberes de su empleo. En definitiva, su despido no fue el resultado de una actuación caprichosa ni arbitraria que se encontrara totalmente desvinculada del buen funcionamiento de la empresa. Por todo lo anterior, erró el foro apelativo intermedio al sustituir su evaluación de la prueba por la del tribunal de instancia.

**IV**

Por los fundamentos expuestos, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones el 11 de septiembre de 2020 y reinstalamos la *Sentencia* desestimatoria emitida por el Tribunal de Primera Instancia el 20 de diciembre de 2018.

Se dictará Sentencia en conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Robert Ortiz Ortiz<br><br>Recurrido<br><br>v.<br><br>Medtronic Puerto Rico Operations, Co.<br><br>Peticionaria | CC-2020-474 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de junio de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones emitida el 11 de septiembre de 2020 y reinstalamos la Sentencia desestimatoria emitida por el Tribunal de Primera Instancia el 20 de diciembre de 2018.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una opinión concurrente, a la cual se unió el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez no interviene.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Robert Ortiz Ortiz<br><br>Recurrido<br><br>v.<br><br>Medtronic Puerto Rico Operations, Co.<br><br>Peticionaria | CC-2020-474 | Certiorari |

Opinión concurrente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 15 de junio de 2022.

La controversia ante nos, más que determinar si la aprobación de la Ley de transformación y flexibilidad laboral, Ley Núm. 4-2017, 29 LPRA sec. 121 et seq. (Ley Núm. 4) es de aplicación retroactiva, exigía que se precisara que el estatuto antes citado no alteró el esquema probatorio en las reclamaciones laborales instadas bajo la Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a et seq. (Ley Núm. 80).

Ciertamente, aunque la Opinión mayoritaria contesta el asunto sobre la retroactividad en la negativa, se intima erróneamente que, con la aprobación de la Ley Núm. 4, el peso de la prueba estatuido en la Ley Núm. 80 fue alterado prospectivamente. No puedo avalar tal pretensión.

Por considerar que en nuestro Derecho laboral sigue vigente el principio de que es el patrono quien tiene la obligación y el peso de la prueba de demostrar que el despido fue justificado, me veo forzado a concurrir con el resultado al cual llega una mayoría de este Tribunal. Me explico.

## I

En la controversia ante nuestra consideración, el Tribunal de Primera Instancia acogió la propuesta del patrono a los efectos de que, con la aprobación de la Ley Núm. 4, se eliminó la disposición de la Ley Núm. 80 que le imponía el deber de alegar los hechos que motivaron el despido y probar su justificación. Al así hacerlo, el foro primario entendió que, indistintamente de la fecha de contratación o despido del empleado, la eliminación de la presunción constituye una enmienda de carácter procesal que es aplicable, incluso, retroactivamente. Por consiguiente, concluyó que el empleado no gozaría de la presunción aludida.

De hecho, así se condujeron los trámites ante el Tribunal de Primera Instancia. En consecuencia, el empleado, y no el patrono, tuvo el peso de la prueba y le tocó demostrar que su despido fue injustificado. Tras celebrar el juicio en su fondo, el foro primario emitió la sentencia correspondiente.

Posteriormente, el Tribunal de Apelaciones, determinó, en lo aquí relevante, que el peso de la prueba recaía en el patrono. El foro apelativo intermedio llegó a esta conclusión afianzándose en el carácter prospectivo que surge diáfanamente del Art. 1.2 de la Ley Núm. 4, supra, el cual dispone que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de esta". 29 LPRA sec. 121a.

Ante ello, este Tribunal se enfrasca en un análisis doctrinal de la Ley Núm. 80 y expone el esquema estatutario preconcebido en nuestro ordenamiento jurídico con respecto a los despidos injustificados. Además, detalla que la Ley Núm. 80, en su acepción original, impone al patrono la carga probatoria inicial de que el despido estuvo justificado e incluye alguna jurisprudencia interpretativa que reafirma los postulados de ese principio. Finalmente, la Mayoría pauta lo que claramente se desprende de la Ley Núm. 4, a saber, que su aplicación es de manera prospectiva. Amparado en ese análisis, acertadamente concluye que como el empleado en cuestión fue contratado en el 2002 y despedido en el 2016 —fechas anteriores al 26 de enero de 2017, momento en que comenzó a regir la Ley Núm. 4— el peso de la prueba le correspondía al patrono.

Sin embargo, al arribar a este dictamen, de la Opinión mayoritaria se intima el reconocimiento erróneo de que, si la contratación realizada por el patrono hubiese ocurrido en una fecha posterior a la que comenzó a regir la Ley Núm. 4, le correspondía al empleado el peso de la prueba y la argumentación inicial de que el despido fue injustificado. Asimismo, y bajo el pretexto de contextualizar la controversia, este Tribunal erróneamente puntualiza que, al aprobarse la Ley Núm. 4, se eliminó de la Ley Núm. 80 la frase que imponía en el patrono el peso de la prueba en las reclamaciones por despido injustificado.[1]

La premisa subyacente de la Mayoría presupone que con la aprobación de la Ley Núm. 4, la Asamblea Legislativa, invirtió el peso de la prueba y cambió el esquema probatorio de la Ley Núm. 80 de manera prospectiva. No obstante, tal y como veremos, ello es incorrecto.

## II

Como es conocido, la Ley Núm. 80 protege al obrero de actuaciones arbitrarias del patrono e impone una serie de remedios económicos para desalentar la práctica de despedir sin causa justificada. Romero et als. v. Cabrera Roig et als., 191 DPR 643, 649-650 (2014).

Ahora bien, dado a la naturaleza reparadora de la Ley Núm. 80, y como parte de las protecciones y normas de

---

[1]Véase, Opinión mayoritaria, pág. 17.

hermenéutica que imperan en el Derecho laboral, la Asamblea Legislativa instituyó un esquema particular a la hora de evaluar las reclamaciones por despido injustificado. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 428-429 (2013). Así pues, una de las herramientas más trascendentales que dimana de la Ley Núm. 80 radica en que, contrario a otro tipo de reclamaciones donde la parte demandante tiene el peso de probar su reclamación, todos los despidos se presumen injustificados, a menos que el patrono pruebe la justa causa exigida.[2] Véase, Romero et als. v. Cabrera Roig et als., supra, pág. 652.

En ese sentido, "esta presunción constituye el eje central de la Ley [Núm.] 80"[3] y tiene como base varias disposiciones establecidas en el estatuto. Por una parte, el Art. 1 de la Ley Núm. 80, supra, el cual, previo a la enmienda promovida por la Ley Núm. 4, disponía que:

> [T]oda separación, terminación o cesantía de empleados contratados por término cierto o proyecto u obra cierta, o la no renovación de su contrato, **se presumirá que constituye un despido sin justa causa** regido por [esta ley]. (Negrillas y énfasis suplidos). 29 LPRA sec. 185a.

---

[2]Para que se active tal presunción, el obrero debe demostrar como hecho base que: (1) era un empleado; (2) que trabajaba mediante remuneración; (3) contratado sin tiempo determinado, y (4) que fue despedido. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 905 (2011) (haciendo referencia al Art. 1 de la Ley Núm. 80, supra).

[3]Jorge Farinacci Fernós, Interpretación liberal: Presunciones probatorias en la legislación protectora del trabajo, 83 Rev. Jur. UPR 15, 64 (2014).

Por otra, el Art. 11 de la precitada ley particularizaba que:

> [E]n toda acción entablada por un empleado reclamando los beneficios dispuestos por [esta ley], **el patrono vendrá obligado a alegar**, en su contestación a la demanda, los hechos que dieron origen al despido y **probar que el mismo estuvo justificado** para quedar eximido de cumplir con lo establecido en [Art. 1] de este título. (Negrillas y énfasis suplidos). Id., sec. 185k(a).

Es al amparo de estas disposiciones que este Tribunal ha señalado que la Ley Núm. 80 "genera una presunción contra el patrono e invierte el peso de la prueba en su contra". Rivera Figueroa v. The Fuller Brush Co., supra, pág. 914. Establecida la presunción, "[l]e toca al patrono rebatir[la]", lo cual necesariamente implica "demostrar lo contrario; es decir, que hubo justa causa". Id., págs. 906-907. Véase, además, Jusino et als. v. Walgreens, 155 DPR 560, 573 (2001); Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 650 (1994).

El efecto práctico de lo anterior estriba en que, "una vez se activa [la] presunción y están presentes los demás elementos de [la] causa de acción [por despido injustificado], el trabajador demandante puede descansar en ello para triunfar en su pleito".[4] De este modo, si el patrono no rebate la presunción y falla en probar que el despido obedeció a alguno de los fundamentos eximentes de

---

[4]Farinacci Fernós, supra, pág. 22.

responsabilidad contenidos en el Art. 2 de la Ley 80, supra, será penalizado con los remedios que dispone esa ley.[5] SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 429 (citas omitidas). Véase, además, SLG Torres-Matundan v. Centro Patología, 193 DPR 920, 933, (2015).

Ahora bien, y según adelanté, en el 2017 se aprobó la Ley Núm. 4 con el propósito de enmendar múltiples leyes laborales. En lo que nos concierne, reconocemos que, con las enmiendas introducidas, se suprimieron las disposiciones de la Ley Núm. 80 que contenían la presunción antes analizada. Sin embargo, ello no implica su inexistencia. Lo anterior, máxime, dado que del historial legislativo surge claramente que la intención final de la Asamblea Legislativa fue preservar el esquema probatorio firmemente arraigado en nuestro ordenamiento que dispone que, en casos bajo la Ley Núm. 80, recae en el patrono probar que el despido no fue injustificado. Veamos.

Inicialmente, el proyecto de la Cámara de Representantes que resultó en la Ley Núm. 4 proponía en su Art. 4.12 eliminar el inciso (a) del Art. 11 de la Ley Núm. 80, supra, y añadir lo siguiente:

> En toda acción judicial o administrativa entablada por un empleado reclamando los beneficios dispuestos por esta Ley, el patrono vendrá obligado a alegar, en su

---

[5] Es decir, "el patrono tiene el peso de demostrar que el empleado cometió una falta cuya intensidad de agravio haga precisa la destitución, para proteger la buena marcha de la empresa y la seguridad de las personas que allí laboran, o incluso de terceros que la visitan". Jusino et als. v. Walgreens, supra, págs. 573-574.

contestación a la demanda o querella, los hechos y las razones que justificaron el despido al igual que cualquier defensa u exención aplicable. **No obstante, le corresponderá al empleado probar que el despido fue injustificado**.[6]

Adviértase que, de conformidad con el texto propuesto, la medida original contempló revertir la presunción de despido impuesta por la Ley Núm. 80. Esto, particularmente, con el propósito de transferirle al empleado el peso de la prueba de que su despido fue injustificado.

No obstante, según revela el Informe de la Comisión de Asuntos Laborales de la Cámara de Representantes, tal pretensión fue eliminada. Los fundamentos para ello fueron los siguientes:

> **La Comisión evaluó dicha disposición y no favoreció el mismo ya que ello no hace un balance entre los derechos del empleado y el patrono porque la Ley Núm. 80, supra, como regla general dispone que el despido será injustificado a no ser que se dé alguna de las circunstancias de justa causa comprendidas en el Art. 2 de la misma**. Por eso, aunque bajo el esquema que se propone se le transfiere el peso de la prueba al empleado, **sigue siendo el patrono quien deberá eventualmente esbozar como defensa y probarle al tribunal alguna de las causas taxativas de justa causa para el despido**.[7]

---

[6](Negrillas y énfasis suplidos). Véase, P. de la C. 453, radicado el 9 de enero de 2017, 1ra Ses. Ord. 18va Asam. Leg., pág. 82 (https://sutra.oslpr.org/osl/esutra/MedidaReg.aspx?rid=1 22925).

[7](Negrillas y énfasis suplidos). Informe sobre el P. de la C. 453, Com. de Asuntos Laborales, Cámara de

Nótese que la eliminación del lenguaje que buscaba imponer en el empleado la carga probatoria respondió, no tan solo a consideraciones sobre el balance desigual en la relación obrero-patronal, sino al entendido de la Cámara de Representantes de que el propio Art. 2 da base a que, de todos modos, el patrono sea al que le corresponda demostrar que el despido fue justificado. Por consiguiente, es razonable concluir que, aunque el lenguaje finalmente aprobado en la Cámara no restituyó las disposiciones relativas a la presunción y carga probatoria, ello obedeció al entendido de que, en virtud del Art. 2 de la Ley Núm. 80, _supra_, sigue siendo el patrono quien tiene el deber de probar que el despido fue por una de las causales que así lo justifican.

Posteriormente, el proyecto antes citado fue referido al Senado y, consecuentemente, la Comisión de Gobierno rindió un _Informe_. De este surge el reconocimiento de que, aun con los cambios propuestos por la Ley Núm. 4 a la Ley Núm. 80, esta última ley es más protectora que casi la totalidad de los estados en donde el peso de la prueba recae en el empleado y predomina el empleo _at will_.[8] Acto

_____

Representantes de Puerto Rico, 13 de enero de 2017, 1ra. Ses. Ord., 18va Asam. Leg., pág. 14.

[8]P. de la C. 453, _Informe Positivo de la Comisión de Gobierno_, 1ra Ses. Ord. 18va Asam. Leg., pág. 27, 18 de enero de 2017 (https://sutra.oslpr.org/osl/SUTRA/anejos_conv/2017-2020/%7B02AE5C0A-2C25-4384-B0EC-8BAE8820F07B%7D.pdf).

seguido, y en apoyo a las virtudes de la medida, el Senado destaca que, "**<u>bajo la Ley [Núm.] 80, supra, el peso de la prueba continuará recayendo sobre el patrono, quien tiene que demostrar que el despido no fue injustificado</u>**".[9]

De lo anterior, se desprende que la clara intención de ambas Cámaras Legislativas fue mantener la presunción de despido injustificado y que le corresponde al patrono el peso de la prueba de demostrar lo contrario. Como cuestión de hecho, así lo reconocieron diversos sectores, incluyendo la entonces Secretaria de Justicia, quien expresó que:

> Al aplicar las reglas de hermenéutica esbozadas y la trayectoria en el historial legislativo, **es forzoso llegar a la conclusión que el debate en la Cámara de Representantes fue incorporar la doctrina jurisprudencial establecida sobre la presunción de despido injustificado, la cual le impone la carga de prueba al patrono**. Es nuestro entender que aun cuando el Proyecto aprobado no contenga la disposición del inciso (a) del Artículo 11 que expresaba que "el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado", **no significa que se haya eliminado la presunción validada jurisprudencialmente contra el patrono**. El historial legislativo y los debates citados demuestran de forma diáfana que **la intención legislativa fue mantener la presunción de despido injustificado contra los patronos y quitarle al empleado el peso de la prueba**. La evidencia e incidencias presentadas no nos

---

[9] (Negrillas y énfasis suplidos). Íd., pág. 28.

permiten espacio para otra interpretación.

No obstante lo anterior, es importante destacar que **el lenguaje del resto de las disposiciones de la Ley Núm. 80**, supra, en sus artículos 1 y 2, denotan **que una vez el empleado haga una reclamación de despido injustificado, le corresponde al patrono, demostrarle al juzgador de los hechos que posee justa causa** para el despido [del] empleado y de esta forma el patrono quedar[á] exonerado del pago de la mesada.

En virtud de lo aquí expuesto, entendemos que aun cuando la enmienda al Artículo 11 de la Ley Núm. 80, supra, no reflejó el inciso (a), **el remanente de la ley y la jurisprudencia interpretativa avalan la conclusión de que sigue vigente una presunción de despido injustificado que el patrono debe rebatir mediante prueba de que el despido fue justificado**, conforme al Artículo 2 de la Ley Núm. 80, supra.

De conformidad con este análisis, entendemos que el proyecto mantiene su propósito social con relación a este asunto y aún persiste que sea el patrono quien tenga que probar si el despido fue uno justificado. Hacer otra interpretación conduciría a un resultado injusto.[10]

Por otro lado, el Secretario del Departamento del Trabajo y Recursos Humanos emitió un Memorando en el que expone la posición de esta agencia con respecto a la

---

[10](Negrillas suplidas). Hon. Wanda Vázquez Garced, Opinión Consultiva Núm. A-77-17, 24 de enero de 2017, págs. 6-7 (https://aldia.microjuris.com/wp-content/uploads/2017/04/op_2017_01.pdf).

presunción de despido injustificado luego de la aprobación de la Ley Núm. 4. Específicamente, este enunció que:

> En otras palabras, la intención legislativa era mantener la presunción de despido injustificado como parte del esquema probatorio que establece la Ley Núm. 80, al eliminar el texto del P. de la C. 453 que la erradicaba del estatuto laboral.
>
> […]
> En vista de lo anterior, **la interpretación oficial** del [Departamento del Trabajo y Recursos Humanos] en cuanto [a] este asunto **es que la presunción de despido injustificado <u>continúa vigente</u> en la Ley Núm. 80,** por lo que cualquier posición contraria a esta, queda, en virtud de este memorando, desautorizada.[11]

De igual modo, la posición del Departamento del Trabajo y Recursos Humanos, según expuesta en las <u>Guías para la interpretación de la legislación de Puerto Rico</u>, mantiene el reconocimiento de la presunción, tal y como

---

[11] (Negrillas y énfasis suplidos). Hon. Carlos J. Saavedra Gutierrez, <u>Presunción sobre despido injustificado</u>, Memorando del Secretario Núm. MS-2017-006, 28 de junio de 2017, pág. 3 (<u>https://www.trabajo.pr.gov/docs/Informes/Informe anual sobre implementación de Ley 4-2017, Ley de Transformación y Flexibilidad Laboral durante el año 2017 (2018).pdf</u>).

Véase, además, <u>Informe anual sobre implementación de ley 4-2017, Ley de Transformación y Flexibilidad Laboral durante el año 2017</u>, 24 de enero de 2018, págs. 15-16 (<u>https://www.trabajo.pr.gov/docs/Informes/Informe anual sobre implementación de Ley 4-2017, Ley de Transformación y Flexibilidad Laboral durante el año 2017 (2018).pdf</u>).

si esta no se hubiese afectado en modo alguno con la aprobación de la Ley Núm. 4.[12]

Según hemos expuesto, contrario a la visión mayoritaria, el raciocinio detrás de esta normativa evidenciaría sigue vigente, pues "el patrono demandado, por su posición más ventajosa, generalmente tiene mayor

---

[12]En lo pertinente, se establece lo siguiente:

**Según señalado por el Tribunal Supremo de Puerto Rico, la Ley Núm. 80 constituye una protección importante que tiene la clase trabajadora en Puerto Rico.** Como vimos, a diferencia de la gran mayoría [de] los estados de la Nación, en Puerto Rico un patrono no está en libertad de despedir a un empleado sin consecuencia alguna. A pesar de que en el pasado el Tribunal Supremo de Puerto Rico ha expresado que la Ley Núm. 80 estableció una presunción de que en la Isla todo despido se presume injustificado, en varios casos recientes el más alto foro parece haberse alejado del concepto de "presunción" para su análisis. En Romero v. Cabrer Roig, Torres Alvarez v. Centro de Patología Avanzada de Puerto Rico, y en González Santiago v. Baxter Healthcare of Puerto Rico, el Tribunal Supremo analizó la Ley Núm. 80 y en esos casos evitó describir el esquema probatorio establecido por el estatuto como una presunción. **Más bien, la Ley Núm. 80 invierte el orden de la prueba que regularmente ocurre en un pleito civil y exige que sea el patrono quien articule primero una causa justificada para el despido del trabajador. Si no lo hace, el patrono se expone a que se resuelva el pleito en su contra.** (Negrillas suplidas) (cita depurada).

Guías para la interpretación de la legislación de Puerto Rico, 8 de mayo de 2019, págs. 122-123 (https://www.trabajo.pr.gov/docs/Boletines/Guias Legislacion Laboral.pdf).

acceso a la evidencia del despido" y puede probar la justa causa con relativa facilidad. <u>Rivera Figueroa v. The Fuller Brush Co.</u>, supra, pág. 915 (citas omitidas). En reconocimiento de esa realidad y ante la prominencia que tiene el trabajo en nuestra sociedad, la Asamblea Legislativa descartó invertir el peso probatorio. Añádase que interpretar lo contrario supondría que el empleado pasara por el vejamen y la incertidumbre de adivinar por cuál causal fue despedido, para entonces así probar que tal motivación es arbitraria y caprichosa y, por tanto, injustificada.

En fin, sostengo que, independientemente de los cambios insertados en la Ley Núm. 80, resulta indubitado que la presunción de despido injustificado sigue vigente en nuestro ordenamiento y que la carga probatoria sobre que el despido fue justificado continúa recayendo en el patrono, tal y como ha sido históricamente.[13] Solo así se

---

[13]Destáquese que, en reconocimiento de que la intención legislativa sobre este asunto ha sido invariable, la Asamblea Legislativa optó por incorporar expresamente la presunción y carga probatoria que dimana de la Ley Núm. 80 a fin de despejar toda duda en cuanto al particular. Un examen del tracto de la medida revela que, como cuestión de hecho, el proyecto fue aprobado por una amplia mayoría tanto de la Cámara como del Senado y se encuentra al pendiente de la firma del Gobernador. Véase, P. de la C. 1244, 6 de marzo de 2022, 3ra Ses. Ord., 19na Asam. Leg. (https://sutra.oslpr.org/osl/esutra/MedidaReg.aspx?rid=140 760). Resáltese que, independientemente de lo que disponga el Ejecutivo sobre el proyecto de ley antes discutido, reafirmamos que la Ley Núm. 80, en su concepción actual, mantiene la presunción de despido injustificado y la imposición en el patrono del peso de la prueba, tal y como hemos expuesto en esta Opinión concurrente.

protege el alto interés público que enmarca esta presunción, así como los propósitos y la naturaleza reparadora de la Ley Núm. 80. Concluir lo contrario supone alejarnos indebidamente de la intención legislativa antes examinada. Más importante aún, implica imponer desde el Poder Judicial una carga indebida sobre la espalda de los trabajadores y las trabajadoras que tocan nuestras puertas en busca de ventilar las causas verdaderas que desembocaron en una acción adversa en su contra.

**III**

Por los fundamentos anteriormente expuestos, concurro con la determinación emitida por una Mayoría de este Tribunal.

Luis F. Estrella Martínez
Juez Asociado